UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

DR. CLYDE PEMBERTON, CHRISTIAN
BAPTISTE, and THOMAS DEBNAM,

                    Plaintiffs,

      -against-

THE CITY OF NEW YORK; NEW YORK
CITY POLICE DEPARTMENT ("NYPD')
OFFICER ANTHONY SENGCO (Shield
#12494); LIEUTENANT KHANDAKAR
ABDULLAH; and NYPD OFFICERS JOHN
AND JANE DOES #1-3, in their individual
capacities;

                    Defendants.

No. 18-CV-7908 (DAB)

**FIRST AMENDED COMPLAINT**
**AND JURYTRIAL DEMAND**

---

        Plaintiffs Dr. Clyde Pemberton, Christian Baptiste, and Thomas Debnam, by and through their attorneys, Emery Celli Brinckerhoff & Abady LLP, for their First Amended Complaint allege as follows:

## NATURE OF THE ACTION

        1.      The NYPD arrested Dr. Clyde Pemberton for being a conscientious business owner while black.  And it arrested Christian Baptiste and Thomas Debnam for being helpful employees while black.

        2.      Dr. Pemberton is the chairman and CEO of the corporation that owns MIST Harlem, a restaurant and entertainment venue.  Mr. Baptiste is MIST's audiovisual technician and Mr. Debnam its marketing director.

3.     On the night of June 1, 2017, Dr. Pemberton, Mr. Baptiste, and others were having a business meeting at MIST.  Dr. Pemberton noticed two women trying to drag a third woman, who was visibly unconscious, across the room.  All three women were white.

4.     Dr. Pemberton, who is a medical doctor, approached the women to express concern for the safety of the unconscious woman.  One of the other two women promptly punched Dr. Pemberton in the chest, began screaming at him, and called him a "n---er" and other racial slurs.

5.     Other MIST staff, including Mr. Baptiste and Mr. Debnam, came to Dr. Pemberton's aid and stood between him and his assailant.  One of the women hit Mr. Baptiste in the face with her purse.  No one pushed, hit, punched, or kicked any of the women.

6.     Dr. Pemberton directed an employee to call 911.  When the paramedics and police arrived, the women were still causing a disturbance and still shouting racial epithets.

7.     The police observed that one woman was drunk or on drugs.  She had to be taken away in an ambulance because she could not walk and was visibly ill.  Police observed the other two women yelling offensive language and acting belligerent.

8.     Dr. Pemberton told the police that he was a medical doctor, showed them his physician's license, and tried to explain the condition of the unconscious woman.  The supervising officer on the scene told him, "You are no doctor or any shit like that here tonight."

9.     Despite having done nothing but express concern for a patron in danger, suffer an unprovoked racist attack, and try to deescalate a volatile situation, Dr. Pemberton, Mr. Baptiste, and Mr. Debnam were arrested.

10.    No NYPD officer even bothered to speak with Mr. Baptiste and Mr. Debnam before handcuffing them, taking them to the precinct, and charging them with crimes.

2

11.     Dr. Pemberton, Mr. Baptiste, and Mr. Debnam did nothing wrong, and no reasonable police officer would have believed they did anything wrong.  More than one officer explicitly told Mr. Baptiste and Mr. Debnam they were "just being taken down to the precinct for questioning" and that they "shouldn't be here."  One said that they "should be fine" because they hadn't done anything wrong, but that they had to be arrested because the supervisor on the scene ordered it.

12.     This is exactly the kind of interaction that destroys trust in law enforcement in minority communities.  The NYPD arrested Dr. Pemberton, Mr. Baptiste, and Mr. Debnam not because of their conduct, but because they were there and they are black. Neither their side of the story nor their freedom mattered to the police.

13.     This incident has left Dr. Pemberton, Mr. Baptiste, and Mr. Debnam deeply shaken.  They had never known the fear, the disrespect, or the pain of being the victim of arbitrary and heavy-handed conduct by the police.

14.     This lawsuit seeks to remedy the injustice perpetrated by the NYPD.  Dr. Pemberton, Mr. Baptiste, and Mr. Debnam are among the many black New Yorkers and black Americans arrested for simply doing the normal things that normal people do—driving a car down the street, having a barbecue, or, in this case, doing one's job.

15.     It is time for the NYPD to be held accountable.  The NYPD must stop reflexively defending its officers without even conducting an investigation, and must instead stamp out misconduct in its ranks and discipline those officers who violate citizens' constitutional rights.

## **PARTIES**

16.     Plaintiff Clyde Pemberton is a 68-year-old black man who at all relevant

3

times was a resident of New Jersey.  Dr. Pemberton is a retired board-certified psychiatrist.  In addition to practicing medicine, Dr. Pemberton previously ran a Harlem-based community mental health center, performed psychological evaluations for the NYPD, and served as a psychiatric consultant to the Newark Police Department.  Dr. Pemberton is also an investor and businessman.  His 21-year-old corporation is the landlord and operator of MIST Harlem.

17.     Plaintiff Christopher Baptiste is a 42-year-old black man who at all relevant times was a resident of Manhattan.  He lives in Harlem with his wife and two children.  For approximately the past two years, he has worked full-time as the manager of the audiovisual department at MIST.

18.     Plaintiff Thomas Debnam is a 32-year-old black man who at all relevant times was a resident of Manhattan.  Mr. Debnam lives in Harlem with his mother and two younger sisters.  He attended college at the New School and is trained as a graphic designer and animator.  For approximately the last year and a half, he has worked full-time as the marketing director of MIST.

19.     Defendant City of New York (the "City") is a municipal corporation duly organized under the laws of the State of New York.  The New York City Police Department ("NYPD") is an agency of the City.

20.     Defendant NYPD Police Officer Anthony Sengco (Shield #12494) is, and was at all relevant times, an employee of the NYPD, acting in the capacity of agent, servant, and employee of the City, within the scope of his individual duties as such, and under color of state law.  Officer Sengco is sued in his individual capacity.

21.     Defendant NYPD Lieutenant Khandakar Abdullah is, and was at all relevant times, an employee of the NYPD, acting in the capacity of agent, servant, and employee

4

of the City, within the scope of his individual duties as such, and under color of state law. Lieutenant Abdullah is sued in his individual capacity.

22.     At all relevant times, John/Jane Does #1-3 (the "Doe Defendants") were employees of the NYPD, acting in the capacity of agents, servants, and employees of the City, within the scope of their employment as such, and under color of state law.  The Doe Defendants are sued in their individual capacities.

23.     Defendants Sengco, Abdullah, and the Doe Defendants are collectively referred to as the "Individual Defendants."

**JURISDICTION AND VENUE**

24.     This action arises under the Fourth and Fourteenth Amendments to the United States Constitution, 42 U.S.C. §§ 1983 and 1988.

25.     This Court has jurisdiction under 28 U.S.C. §§ 1331, 1343(a)(3), 1343(a)(4), and 1367.

26.     Venue is proper in this Court under 28 U.S.C. § 1391(b) because the acts complained of occurred in the Southern District of New York.

**JURY DEMAND**

27.     Plaintiffs demand trial by jury.

**FACTUAL ALLEGATIONS**

***Dr. Pemberton Tries to Help an Unconscious, Intoxicated Patron***

28.     MIST is an entertainment destination with a café, a restaurant and bar, and several event spaces, all under one roof.

29.     On the evening of June 1, 2017, Dr. Pemberton had dinner with two business associates in the restaurant at MIST.  He then held a meeting with Mr. Baptiste and

5

other colleagues in the café section, which was closed to customers, to prepare for an event the next day.

30.     Around 10:30 pm, Dr. Pemberton saw three white women leave the women's restroom and move in the direction of the café.  One of the women was visibly unconscious.  The other two women were holding her by the arms, one on either side, and were dragging her across the room.

31.     The women knocked over the stanchion of a rope that had been hung to close off the café to customers.

32.     Dr. Pemberton went over to the women and asked what was wrong.  He suggested, in substance, that the women place the unconscious person in a chair.

### *Dr. Pemberton Is the Target of a Physical and Verbal Racist Assault*

33.     In response, the woman who had been holding one hand of the unconscious woman dropped her friend's arm, punched Dr. Pemberton in the chest, and began yelling racial epithets at him.

34.     This woman, who had blond hair, called Dr. Pemberton a "n---er."

35.     Mr. Baptiste and Dr. Pemberton's son had also gotten up from the table where they had been sitting with Dr. Pemberton.  They got in between the blond woman and Dr. Pemberton after she punched him.

36.     The other conscious woman, who had brown hair, became violent and aggressive and hit Mr. Baptiste in the head with her purse.  Other MIST employees intervened to attempt to calm the situation.

37.     Mr. Debnam had come downstairs from the office to ask Mr. Baptiste a question.  When he got to the café, he saw the woman punching Dr. Pemberton.  He also came

over to help.

38.     Dr. Pemberton asked for 911 to be called and promptly went outside to the sidewalk to wait for emergency personnel to arrive.

***The Women Continue Behaving in an Unsafe Manner***

39.     The blond woman continued to yell, scream, and push and kick at MIST employees.  She tried to smack the cell phone out of the hand of a MIST employee who was trying to call 911.  She also continued to use racial epithets, saying, in substance, "Go back to the Congo" and "Go back to Africa, you n---ers."

40.     MIST employees, including Mr. Baptiste and Mr. Debnam, tried to calm her down and get her to leave.

41.     Instead, the blond woman and the brown-haired woman remained belligerent and resumed dragging the unconscious woman out.  They tried to pick up the unconscious woman, who was in bad condition, but were unable to do so.

42.     MIST staff told the women, in sum and substance, that they could not drag out the unconscious woman, and that the unconscious woman needed to remain safely on the premises until an ambulance arrived.

43.     At no time did any person associated with MIST, including Dr. Pemberton, Mr. Baptiste, or Mr. Debnam, tell the two conscious women that they were not free to leave the premises themselves.  To the contrary, they were pointed to the exits.

44.     At no time did any person associated with MIST, including Dr. Pemberton, Mr. Baptiste, or Mr. Debnam, physically restrain any of the women.

45.     At no time did any person associated with MIST, including Dr. Pemberton, Mr. Baptiste, or Mr. Debnam, push, hit, strike, or punch any of the women.

7

46.     At no time did any person associated with MIST, including Dr. Pemberton, Mr. Baptiste, or Mr. Debnam, lock or obstruct any of the several exits from the premises.

***The Police Respond to the Scene***

47.     In response to the 911 call, paramedics and then police arrived on the scene.  Dr. Pemberton identified himself as the owner of the premises and showed them inside.

48.     When the police came inside, the blond woman who had punched Dr. Pemberton was still being combative, and she yelled at the police.  The brown-haired woman became aggressive as well.  Both were escorted out the door by police.

49.     The unconscious woman was taken outside to an ambulance.

50.     Outside, the women continued yelling at police and paramedics, using racially offensive language, even as the police and paramedics were working to put the unconscious woman in the ambulance.

51.     Dr. Pemberton, Mr. Baptiste, and Mr. Debnam also went outside to collect themselves.

52.     The blond woman walked away, down 116th Street.  Police officers called after her to tell her to stop.  An officer in a white shirt, who on information and belief is Lieutenant Abdullah, walked after the woman and talked to her briefly.

53.     Lieutenant Abdullah came back toward Dr. Pemberton.  He approached Dr. Pemberton and asked if he was the owner.  Dr. Pemberton responded that he was a physician.  Lieutenant Abdullah responded, in sum and substance, "You are no doctor or any shit like that here tonight."

***Dr. Pemberton, Mr. Baptiste, and Mr. Debnam Are Falsely Arrested and Taken to the Precinct***

54.     Lieutenant Abdullah told another police officer to arrest Dr. Pemberton.

55.     Before arresting him, no one interviewed Dr. Pemberton further, asked

him what happened, or listened to what he had to say.

56.     Dr. Pemberton was fully compliant with all police instructions and did not

actively or passively resist arrest in any way.

57.     The officers handled Dr. Pemberton, who was 67 years old at the time of

this incident, roughly when they handcuffed him and put him in the patrol car.  They grabbed Dr.

Pemberton hard enough that his glasses fell off, fell to the ground, and broke in half:



58.     The officers pushed Dr. Pemberton into the patrol car in a forceful

manner.  His head struck the frame of the car door.  The officers then pushed him into the car.

59.     After directing that Dr. Pemberton be arrested, Lieutenant Abdullah

pointed to Mr. Baptiste and Mr. Debnam and said, in substance, "them too."

60.     Mr. Baptiste and Mr. Debnam were handcuffed by other officers.  They

were fully compliant with all police instructions and did not actively or passively resist arrest in

any way.

9

61.     Before arresting them, no one interviewed Mr. Baptiste or Mr. Debnam, asked them what happened, or listened to what they had to say.  Mr. Debnam asked the officer in white why he was being detained, but he did not get any response.

62.     In the patrol car on the way to the precinct, the officers in the front seat told Mr. Baptiste and Mr. Debnam, in sum and substance, that they were "just being taken down to the precinct for questioning."  They said, in sum and substance, that Lieutenant Abdullah was their boss and they had to do what he wanted.  The driver of the car said, in sum and substance, "You should be fine because you didn't do anything."

63.     At the time the arrests were made, on information and belief, no police officer had witnessed Dr. Pemberton, Mr. Baptiste, or Mr. Debnam engage in any unlawful conduct, and no police officer had been told that Dr. Pemberton, Mr. Baptiste, or Mr. Debnam engaged in any unlawful conduct.

64.     If the police were relying on information provided by the blond woman, such information would have been unreliable, and any reasonable police officer would have known that it was unreliable and required further investigation before acting upon it under the circumstances.  The police personally observed that the blond woman was violent, uncooperative, and yelling racial slurs.  She had just committed an unprovoked physical assault in the presence of numerous witnesses and, on information and belief, was intoxicated.  The police arrested her at the scene and therefore believed there was probable cause to arrest her; she was later charged with assault with intent to cause physical injury, among other offenses.

65.     No reasonable officer under the circumstances would have found any information provided by the blond woman sufficiently reliable to form the basis of the arrest without at least first asking Dr. Pemberton, Mr. Baptiste, Mr. Debnam, or other witnesses for

their version of events.

66.     The police also observed that one of the women was extremely ill and in need of emergency medical attention.  They knew or should have known that the blond woman was trying to drag her and prevent her from receiving necessary medical care.  The police also saw, or reasonably should have seen, that the doors to MIST were unlocked from the inside such that the blond woman and her conscious friend were free to leave.

***Dr. Pemberton, Mr. Baptiste, and Mr. Debnam Are Falsely Charged with Crimes***

67.     Dr. Pemberton, Mr. Baptiste, and Mr. Debnam were taken to the 28th Precinct.

68.     When they got to the precinct, Mr. Debnam asked about how long the process would be expected to take because he had to take his sisters to school in the morning.  In response, an officer threatened to call Children's Services.

69.     Dr. Pemberton, Mr. Baptiste, and Mr. Debnam were searched, fingerprinted, and had their mug shots taken.  While they were being booked, Officer Sengco said, in sum and substance, that they "shouldn't be here" and that he would "try to convince the captain to get them a bench ticket" instead of sending them to Central Booking.

70.     They were held in a cell for about five to six hours total.

71.     They were each eventually given desk appearance tickets and charged with unlawful imprisonment in violation of Penal Law § 135.05, a Class A misdemeanor punishable by up to one year of imprisonment.  They were then released in the early morning.

72.     A criminal complaint signed by Officer Sengco under penalty of perjury states that Officer Sengco observed Mr. Debnam and Mr. Baptiste state that they tried to prevent the women from leaving the premises.  Officer Sengco's statements are knowingly false.  Neither

Mr. Debnam nor Mr. Baptiste ever said that, and they never tried to prevent the women from leaving the premises.  The doors to the premises were unlocked from the inside.

73.     The criminal complaint also states that Officer Sengco spoke with Dr. Pemberton, and that Dr. Pemberton said he ordered the bouncers to keep the women from leaving.  Officer Sengco's statement is knowingly false.  Dr. Pemberton never said that, and he never instructed anyone to keep the women from leaving the premises.

74.     Dr. Pemberton, Mr. Baptiste, and Mr. Debnam were all required to make approximately four court appearances over the course of the next several months.

75.     They incurred $15,000 in legal fees in total to defend themselves against the false charges.

76.     The District Attorney dismissed the charges on November 30, 2017.

77.     Plaintiffs served notices of claim on the City on August 28, 2017 and served amended notices on February 26, 2018, after the favorable termination of the criminal proceedings.  They submitted to examinations as required by General Municipal Law § 50-h.

***Dr. Pemberton, Mr. Baptiste, and Mr. Debnam Are Deeply Shaken by the Experience***

78.     Being falsely arrested and prosecuted in a way that simply would not have happened if they were white has had a profound effect on Dr. Pemberton, Mr. Baptiste, and Mr. Debnam.  It has fundamentally changed the way they see the police and the extent to which they feel comfortable in their own neighborhoods—and, indeed, in their own skin.

79.     Being locked up, repeatedly coming back to court, and being threatened with possible criminal convictions was a disturbing and stressful experience.

80.     All three men now try to avoid interactions with the police whenever possible.  They do not trust that the NYPD will not abuse its authority again.

12

81.     The incident has affected Dr. Pemberton's business.  It led business partners to decide not to invest as much or at all.  Since the incident, the NYPD has labelled MIST a facility where criminal activity has taken place, leading to more officers on site and additional ID checks.  The increased police presence falsely portrays MIST as dangerous or unsavory, is not good for business, and harms MIST's standing with promoters who might want to book events at the venue.

82.     The incident caused tension between Mr. Baptiste and his wife.  When he was supposed to have come on home after work on the night of June 1, and instead was nowhere to be found until almost sunrise, she became very upset.

83.     Mr. Debnam experienced considerable stress and lost a significant amount of weight in the aftermath of the incident.  He is concerned that having been booked and fingerprinted by the NYPD may affect his career aspirations, including his desire to become a teacher.

## FIRST CAUSE OF ACTION
42 U.S.C. § 1983 – Fourth and Fourteenth Amendments – False Arrest
(All Plaintiffs Against All Individual Defendants)

84.     Plaintiffs repeat and reallege the above paragraphs as if they were fully set forth at length herein.

85.     Individual Defendants wrongfully and illegally arrested Plaintiffs and falsely charged Plaintiffs with numerous crimes.

86.     The wrongful, unjustifiable, and unlawful apprehension, arrest, and detention of Plaintiffs was carried out without any basis, without Plaintiffs' consent, and without probable cause or reasonable suspicion.

87.     Defendants knew they lacked probable cause to arrest Plaintiff because

13

they knew that Plaintiffs had not engaged in any unlawful conduct.

88.     No reasonable officer would have believed there was probable cause to arrest Plaintiffs under these circumstances.

89.     At all relevant times, Individual Defendants acted forcibly in apprehending and arresting Plaintiffs.

90.     Throughout this period, Plaintiffs were unlawfully, wrongfully, and unjustifiably held under arrest, deprived of their liberty, and falsely charged.  At all times, the unlawful, wrongful, and false arrests of Plaintiffs were without basis and without probable cause or reasonable suspicion.

91.     All this occurred without any fault or provocation on the part of Plaintiffs.

92.     Individual Defendants acted under pretense and color of state law.  Said acts by Individual Defendants were beyond the scope of their jurisdiction, without authority of law, and in abuse of their powers, and Individual Defendants acted willfully, knowingly, and with the specific intent to deprive Plaintiffs of their constitutional rights secured by 42 U.S.C. § 1983, and by the Fourth and Fourteenth Amendments to the United States Constitution.

93.     Individual Defendants' conduct was willful, wanton, and reckless.

94.     As a direct and proximate result of the misconduct and abuse of authority detailed above, Plaintiffs sustained the damages hereinbefore alleged.

## SECOND CAUSE OF ACTION
### 42 U.S.C. § 1983 – Malicious Prosecution
### (All Plaintiffs Against Defendant Sengco)

95.     Plaintiffs repeat and reallege the above paragraphs as if they were fully set forth at length herein.

96.     Defendant Sengco maliciously and without justification commenced

criminal proceedings against Plaintiffs.

97.     Defendant Sengco charged Plaintiffs with crimes falsely, maliciously, in bad faith, and without probable cause.

98.     Defendant Sengco knew he lacked probable cause to prosecute Plaintiffs because he knew they had done nothing wrong, should not have been arrested, and that no reliable information suggested they had committed any offense.

99.     No reasonable officer would have believed there was probable cause to prosecute Plaintiffs under these circumstances.

100.    After criminal proceedings in which Plaintiffs were forced to defend themselves, all charges against Plaintiffs were terminated in Plaintiffs' favor.

101.    Defendant Sengco acted under pretense and color of state law.  Said acts by Defendant were beyond the scope of his jurisdiction, without authority of law, and in abuse of his powers, and Defendant Sengco acted willfully, knowingly, and with the specific intent to deprive Plaintiffs of their constitutional rights secured by 42 U.S.C. § 1983, and by the Fourth and Fourteenth Amendments to the United States Constitution.

102.    Defendant Sengco's conduct was willful, wanton, and reckless.

103.    As a direct and proximate result of the misconduct and abuse of authority detailed above, Plaintiffs sustained the damages hereinbefore alleged.

### THIRD CAUSE OF ACTION
42 U.S.C. § 1983 – Excessive Force
(Plaintiff Pemberton Against Defendants John Doe #1-2)

104.    Plaintiff repeats and realleges the above paragraphs as if they were set forth fully herein.

105.    By reason of the foregoing, and by pushing, manhandling, and knocking

15

the glasses off of Dr. Pemberton, Officers John Doe #1-2 used unreasonable and excessive force against Dr. Pemberton under the circumstances they confronted.

106.     Officers John Doe #1-2 acted under pretense and color of state law.  Said acts by Officers John Doe #1-2 were beyond the scope of their jurisdiction, without authority of law, and in abuse of their powers, and Officers John Doe #1-2 acted willfully, knowingly, and with the specific intent to deprive Dr. Pemberton of his constitutional rights secured by 42 U.S.C. § 1983, and by the Fourth and Fourteenth Amendments to the United States Constitution..

107.     As a direct and proximate result of the misconduct and abuse of authority detailed above, Dr. Pemberton sustained the damages hereinbefore alleged.

### FOURTH CAUSE OF ACTION
42 U.S.C. § 1983 – Failure to Intervene
(All Plaintiffs Against All Individual Defendants)

108.     Plaintiffs repeat and reallege the above paragraphs as if they were set forth fully herein.

109.     Uniformed NYPD officers have an affirmative duty to assess the lawfulness of interactions between their fellow members of service and civilians and to intervene where they observe another uniformed employee falsely arresting a civilian or using excessive force against a civilian.

110.     Individual Defendants were present and witnessed other defendants falsely arrest and detain Plaintiffs and use excessive force against Dr. Pemberton.

111.     Individual Defendants had a reasonable opportunity to intervene to prevent the false arrest and detention of Plaintiffs and the use of excessive force against Dr. Pemberton.

112.     Individual Defendants failed to take any action or make any effort to

16

intervene, halt the unlawful actions of their fellow police officers, or protect Plaintiffs.

113.    Individual Defendants' failure to intervene proximately caused the violation of Plaintiffs' constitutional rights.

114.    As a direct and proximate result of the misconduct and abuse of authority detailed above, Plaintiffs sustained the damages hereinbefore alleged.

## FIFTH CAUSE OF ACTION
Common Law False Arrest / False Imprisonment
(All Plaintiffs against Defendant City and All Individual Defendants)

115.    Plaintiffs repeat and reallege the above paragraphs as if they were set forth fully herein.

116.    By reason of the foregoing, and by wrongfully and illegally arresting, detaining, and imprisoning Plaintiffs, Individual Defendants, under pretense and color of state law and acting within the scope of their employment as NYPD officers, falsely arrested and falsely imprisoned Plaintiffs.

117.    Individual Defendants' wrongful, unjustifiable, and unlawful apprehension, arrest, and detention of Plaintiffs were intentional and carried out with Plaintiffs' knowledge but without their consent.  Individual Defendants lacked probable cause or any other basis in law to arrest or imprison Plaintiffs.  At all relevant times, Individual Defendants acted forcibly in apprehending and arresting Plaintiffs.

118.    Individual Defendants acted with a knowing, willful, wanton, grossly reckless, unlawful, unreasonable, unconscionable, and flagrant disregard of Plaintiffs' rights, privileges, welfare, and well-being, and are guilty of egregious and gross misconduct toward Plaintiffs.

119.    Defendant City, as employer of the Individual Defendants, is responsible

for their wrongdoing under the doctrine of *respondeat superior*.

120.    As a direct and proximate result of the misconduct and abuse of authority detailed above, Plaintiffs sustained the damages hereinbefore alleged.

### SIXTH CAUSE OF ACTION
Common Law Malicious Prosecution
(All Plaintiffs against Defendant City and Defendant Sengco)

121.    Plaintiffs repeat and reallege the above paragraphs as if they were set forth fully herein.

122.    Officer Sengco, acting in his capacity as an NYPD officer and within the scope of his employment as such, maliciously commenced criminal proceedings against Plaintiffs.

123.    Officer Sengco charged Plaintiffs falsely, in bad faith, and without probable cause.

124.    After months of legal proceedings in which Plaintiffs were forced to make numerous appearances and to defend themselves, all charges against Plaintiffs were terminated in Plaintiffs' favor.

125.    Defendant City, as employer of Officer Sengco, is responsible for his wrongdoing under the doctrine of *respondeat superior.*

126.    As a direct and proximate result of the misconduct and abuse of authority detailed above, Plaintiffs sustained the damages hereinbefore alleged.

### SEVENTH CAUSE OF ACTION
Common Law Assault
(Plaintiff Pemberton against Defendant City and Defendants John Does #1-2)

127.    Plaintiffs repeat and reallege the above paragraphs as if they were set forth fully herein.

18

128.    By reason of the foregoing , Officer John Doe #1-2, acting in their capacity as NYPD officers and within the scope of their employment as such, intentionally placed Dr. Pemberton in apprehension of an imminent offensive contact and displayed the ability to effectuate such contact, and thereby committed a willful, unlawful, unwarranted, and intentional assault upon Dr. Pemberton.

129.    The assault committed by Officer John Does #1-2 who arrested Dr. Pemberton was unnecessary and unwarranted in the performance of their duties as NYPD officers and constituted an unreasonable and excessive use of force.

130.    Defendant City, as employer of Officer John Does #1-2 who arrested Dr. Pemberton, is liable for their wrongdoing under the doctrine of *respondeat superior*.

131.    As a direct and proximate result of the misconduct and abuse of authority detailed above, Dr. Pemberton sustained the damages hereinbefore alleged.

## EIGHTH CAUSE OF ACTION
### Common Law Battery
(Plaintiff Pemberton against Defendant City and Defendants John Does #1-2)

132.    Plaintiffs repeat and reallege the above paragraphs as if they were set forth fully herein.

133.    By reason of the foregoing and by pushing, manhandling, and knocking the glasses off of Dr. Pemberton, Officer John Does #1-2, acting in their capacity as NYPD officers and within the scope of their employment as such, committed a willful, unlawful, unwarranted, and intentional battery upon Dr. Pemberton.

134.    The battery committed by Officer John Does #1-2 who arrested Dr. Pemberton was unnecessary and unwarranted in the performance of their duties as NYPD officers and constituted an unreasonable and excessive use of force.

135.   Defendant City, as employer of Officer John Does #1-2 who arrested Dr. Pemberton, is liable for their wrongdoing under the doctrine of *respondeat superior*.

136.   As a direct and proximate result of the misconduct and abuse of authority detailed above, Dr. Pemberton sustained the damages hereinbefore alleged.

### NINTH CAUSE OF ACTION
Negligent Hiring, Retention, Training and Supervision
(All Plaintiffs against Defendant City)

137.   Plaintiffs repeat and reallege the foregoing paragraphs as if they were fully set forth herein.

138.   The City and its employees, servants and/or agents, acting within the scope of their employment, did negligently hire, retain, train, and/or supervise the Individual Defendants who were unfit, and whom they knew to be unfit, for the performance of police duties on the date of the incident.

139.   The City had an obligation to ensure that NYPD officers be trained in how to conduct an investigation before making an arrest and how to evaluate witness credibility.  On information and belief, the Individual Defendants did not receive such training.

140.   The NYPD also knew that its officers would regularly interact with members of the public who are black.  The NYPD therefore had an obligation to conduct training concerning racial discrimination in police-citizen interactions and how to avoid it.  The NYPD also has a policy or custom of not disciplining or holding accountable officers who violate citizens' constitutional rights because of their race.

141.   On information and belief, the Individual Defendants would not have acted as they did if the NYPD had provided adequate training and disciplined officers who discriminate on the basis of race and/or arrest innocent citizens on false charges without even

conducting even a very basic investigation.

142.     As a direct and proximate result of the City's negligence, Plaintiffs

sustained the damages hereinbefore alleged.

\*         \*         \*

WHEREFORE, Plaintiffs respectfully request judgment against Defendants as

follows:

a.     Compensatory damages in an amount to be determined at trial;

b.     Punitive damages against Individual Defendants in an amount to be

determined at trial;

c.     Reasonable attorneys' fees and costs under 42 U.S.C. § 1988; and

d.     Such other and further relief as this Court may deem just and proper.

Dated: New York, New York
       June 3, 2019

EMERY CELLI BRINCKERHOFF &
ABADY LLP

By:        _/s/ Elizabeth S. Saylor_
           Elizabeth S. Saylor
           Douglas E. Lieb
           600 Fifth Avenue, 10th Floor
           New York, New York 10020
           (212) 763-5000
           *Attorneys for Plaintiffs*