# EMERY CELLI BRINCKERHOFF & ABADY LLP

RICHARD D. EMERY
ANDREW G. CELLI, JR.
MATTHEW D. BRINCKERHOFF
JONATHAN S. ABADY
EARL S. WARD
ILANN M. MAAZEL
HAL R. LIEBERMAN
DANIEL J. KORNSTEIN
O. ANDREW F. WILSON
ELIZABETH S. SAYLOR
KATHERINE ROSENFELD
DEBRA L. GREENBERGER
ZOE SALZMAN
SAM SHAPIRO

ATTORNEYS AT LAW
600 FIFTH AVENUE AT ROCKEFELLER CENTER
10TH FLOOR
NEW YORK, NEW YORK 10020

TEL: (212) 763-5000
FAX: (212) 763-5001
www.ecbalaw.com

DIANE L. HOUK

EMMA L. FREEMAN
DAVID BERMAN
HARVEY PRAGER
SCOUT KATOVICH
MARISSA BENAVIDES
NICK BOURLAND
ANDREW K. JONDAHL
ANANDA BURRA
MAX SELVER

May 29, 2020

BY ECF

Hon. Lorna G. Schofield
United States District Judge
Thurgood Marshall
United States Courthouse
40 Foley Square
New York, New York 10007

    Re:    *Pemberton et al. v. City of New York et al.*, No. 18-CV-7908

Your Honor:

    We write on behalf of Plaintiffs Dr. Clyde Pemberton and Christian Baptiste in response to Defendants' pre-motion letter ("Defs.' Ltr.", Dkt. #57).[1] Judge Batts was right when she wrote in the case management order: "Summary judgment motions: None. Too fact-specific." Defendants' anticipated motion for summary judgment should be denied because nearly every material fact in this case is disputed.

**Police Unjustifiably Arrest the Victims of a Racist Assault**

    Dr. Pemberton is the CEO of the corporation that owns MIST Harlem, a restaurant, bar, and entertainment venue. Mr. Baptiste is its audiovisual technician. On the night of June 1, 2017, they and others were holding a business meeting in a closed, roped-off area of MIST when they noticed two women dragging a third woman, who appeared incapacitated, across the room. Dr. Pemberton went over to the women, identified himself as a medical doctor, said that the incapacitated woman could not be dragged out of the restaurant, and directed staff to call 911. In response, one of the women, Eva Levin, punched Dr. Pemberton in the chest and yelled racial slurs at him. MIST staff, including Mr. Baptiste, intervened. The women became combative and assaulted the staff, yelling racial slurs such as "Go back to Africa, you n----ers."

    By the time police arrived, the NYPD had received *six* 911 calls alleging that the women

---

[1] The claims of Plaintiff Thomas Debnam have been resolved by a settlement in principle.

EMERY CELLI BRINCKERHOFF & ABADY LLP

Hon. Lorna G. Schofield
May 29, 2020
Page 2

were intoxicated, assaulting MIST staff, and/or using racial slurs. The women were still yelling and screaming, physically assaulting MIST staff, and making racial remarks at the time the police arrived. Yet Defendant Abdullah ordered the arrest of *Plaintiffs* for purported unlawful imprisonment of the women. Plaintiffs spent approximately five to six hours in jail and was required to make several court appearances over the course of months until the charges were dismissed outright.

**The Existence and Substance of Any Alleged Complaint to Police Is Disputed**

Contrary to Defendants' assertion, a genuine dispute of material fact plainly exists as to what, if anything, the alleged complaining witness, Eva Levin, told police. *Cf.* Defs.' Ltr. 1-2. Nonparty witness testimony, Defendants' own testimony, and police records all contradict Defendants' assertions. Whether Defendants are telling the truth about what Ms. Levin purportedly told them is a classic credibility question for the jury. Drawing all reasonable inferences in Plaintiffs' favor, no civilian complaint gave rise to probable cause or arguable probable cause to arrest Dr. Pemberton or Mr. Baptiste.

Ms. Levin was not deposed in this case because both sides were unable to serve her with process. Her friend Lilia Mears testified that no one who worked for MIST blocked the doors to the premises. *See* Mears Tr. 31:10-17 ("Q. You were able to walk up to the café door; you actually tried to open the door? A. Yes. Q. It was locked, right? A. Yes. Q. There was not anyone blocking your path? A. No."); *id.* at 33:6-9 ("Q. Did you see anyone stand in front of the door with their arms our before the police arrived? A. No."). By itself, that raises a genuine dispute of material fact as to Ms. Levin's alleged complaint: Why would Ms. Levin falsely tell the police something her friend acknowledges never happened? In Officer Sengco's telling, moreover, Ms. Levin purportedly pointed out "at least *one* gentleman" who had been blocking the door. Sengco Tr. 112:21 (emphasis added). Drawing all reasonable inferences in Mr. Baptiste's favor, that unidentified *one* person was someone else (perhaps Mr. Debnam), so no probable cause existed to arrest Mr. Baptiste even if Officer Sengco's account of his alleged conversation with Ms. Levin is credited. Lieutenant Abdullah claims to have spoken with Ms. *Mears*, not Ms. Levin. *See* Abdullah Tr. 44:9-12, 76:25-77:5. His assertion that Ms. Mears told him the doors were blocked is fabricated, as Ms. Mears flatly denied that any such thing occurred. Moreover, according to his colleague and his memo book, Lieutenant Abdullah was not even present at the scene at the time he claims to have made certain observations of Ms. Mears.

Even if Defendants could establish as a matter of law that Ms. Levin made some complaint about unlawful behavior by one or more of the Plaintiffs—which they cannot—a genuine dispute of material fact would remain as to whether Ms. Levin's complaint was sufficiently reliable to be credited. *See Bullard v. City of New York*, 240 F. Supp. 2d 292, 298-99 (S.D.N.Y. 2003). When Officer Sengco first responded to the scene, he was aware of six 911 calls complaining of disorderly, assaultive, and/or racist conduct by women at the premises. When he came inside, he saw Ms. Levin and Ms. Mears physically assaulting MIST employees and hurling racial slurs at them. Ms. Levin and Ms. Mears were also both visibly intoxicated.

EMERY CELLI BRINCKERHOFF & ABADY LLP

Hon. Lorna G. Schofield
May 29, 2020
Page 3

**Dr. Pemberton's Words Cannot Give Rise to Probable Cause, Or Arguable Probable Cause, for the Offense of Unlawful Imprisonment**

Defendants identify one—and only one—undisputed fact purportedly supporting the arrest and prosecution of Dr. Pemberton, who is not accused of committing any physical act of imprisonment himself.  After noticing an unconscious patron being dragged across the floor of his restaurant, and after being physically assaulted in response to his expression of concern, Dr. Pemberton directed an employee to call 911 and told MIST staff that the unconscious woman should remain on site until an ambulance arrived.  Pemberton Tr. 40:25-41:5, 43:7-9.

Assuming *arguendo* that the police were aware of this anodyne statement, no reasonable police officer could believe it to be a crime.  Under the Penal Law, "[a] person is guilty of unlawful imprisonment in the second degree when he restrains another person."  N.Y. Penal Law § 135.05.  "Restrain," in turn, means that a person is moved or confined "without consent," which the statute expressly defines as "accomplished by . . . *physical force, intimidation or deception*."  *Id.* § 135.00(1) (emphasis added).  The statute is clear on its face: there can be no unlawful imprisonment without force, intimidation, or deception.  *See id.*; *People v. Denson*, 26 N.Y.3d 179, 190 (2015).  The Second Circuit has explained that "intimidation" within in the meaning of § 135.00(1) entails, by definition, "the threatened use of physical force."  *Dickson v. Ashcroft*, 346 F.3d 44, 49 (2d Cir. 2003).  No reasonable police officer could conclude that Dr. Pemberton's words constituted a use of force, a threat of force, or an act of deception.

**No Legal Basis Existed to Arrest Dr. Pemberton for Unlawful Sale of Alcohol to an Intoxicated Patron**

Defendants' fallback position also fails, as no legal basis existed to arrest Dr. Pemberton for an alleged violation of Alcoholic Beverage Control ("ABC") Law § 65.  Citing *Rodriguez v. Village of Sleepy Hollow*, No. 13-CV-8465, 2015 WL 4597446, at *7-8 (S.D.N.Y. July 29, 2015), Defendants claim that "[a] corporate officer or owner of an establishment that violates § 65 can be prosecuted for the violation."  Defs.' Ltr. 3.  However, the New York Court of Appeals has held that there is *no* vicarious liability under the ABC Law as a matter of statutory construction and that a corporate officer or owner cannot be prosecuted without knowledge of or participation in the unlawful act.  *See People v. Byrne*, 77 N.Y.2d 460 (1991).  *Rodriguez*, in contrast, holds that a corporate owner cannot hide behind the corporate form to "escape individual liability" for violations of health and safety codes by his entities *for which he is personally responsible*.  2015 WL 4597446, at *7.  Here, Defendants point to no information suggesting that Dr. Pemberton, who was holding a business meeting in a physically separate area of the premises, had any knowledge of or participation in the bartender's pouring of drinks for a patron.

And, of course, whether or not Dr. Pemberton was lawfully *arrested* for an alcohol violation does not affect his claim for malicious *prosecution*.  The District Attorney's Office did not prosecute Dr. Pemberton for the alcohol violation, but only for unlawful imprisonment, based

EMERY CELLI BRINCKERHOFF & ABADY LLP

Hon. Lorna G. Schofield
May 29, 2020
Page 4

solely on Officer Sengco's false statement that Dr. Pemberton "admitted" ordering the "bouncers" to block the doors to the premises.

**Plaintiffs Will Review the Excessive Force Claim**

We are reviewing the deposition testimony and the law concerning Dr. Pemberton's excessive force claim to determine whether an adequate basis exists to pursue it. If we determine that the claim should be dismissed, we will promptly notify Defendants and propose a stipulation of dismissal to avoid motion practice.

**Dr. Pemberton Is Entitled to Recover for Consequential Damages Sustained Through Corporate Vehicles He Controls**

Defendants fail to support their assertion that a business owner whose civil rights are violated as an individual cannot recover for business losses proximately caused by the violation. In the cases on which Defendants rely, the individual plaintiff himself suffered no cognizable injury and was instead seeking to sue for a wrong perpetrated against the corporation that he owned. *See Erlich v. Glasner*, 418 F.2d 226, 227 (9th Cir. 1969); *Colon v. Maddalone*, No. 95-CV-0008, 1996 WL 556924, at *3 (S.D.N.Y. Oct. 1, 1996) (plaintiff suing in capacity as president of corporation lacked Article III standing to bring action concerning allegedly improper actions taken by IRS actions "against . . . the taxpayer *corporation*" (emphasis added)); *see also Sterngass v. Bowman*, 563 F. Supp. 456, 459 (S.D.N.Y. 1983) (explaining that *Erlich* and its progeny concern "wrong to the corporation").[2]

Here, in contrast, Dr. Pemberton's civil rights were violated in his individual capacity. As a proximate result of his false arrest and malicious prosecution, he was unable to pursue certain business interests, causing entities he wholly or partially owns to lose value and/or income. It is well established that an individual plaintiff who prevails on a malicious prosecution claim can recover lost income damages. *See, e.g.*, *Johnson v. City of New York*, No. 15-CV-5873, 2019 WL 4279572, at *6 (E.D.N.Y. Aug. 2, 2019) (awarding such damages); *Rodick v. City of Schenectady*, 856 F. Supp. 105, 107 (N.D.N.Y. 1994) (same). Unless he is a sole proprietor, every such plaintiff derives his income from a nonparty corporation in some manner or another. None of the cases cited by Defendant suggest that a plaintiff whose civil rights are violated individually should be precluded from recovering pecuniary damages because his income comes in the form of a business owner's distributions rather than a worker's wages.

Defendants' assertion that Dr. Pemberton should be precluded from pursuing consequential damages because he has not yet disclosed an expert is ridiculous. *See Williams v. County of Orange*, No. 03-CV-5182, 2005 WL 6001507, at *3 (S.D.N.Y. Dec. 13, 2005)

---

[2] While Dr. Pemberton did withdraw his claim for damages suffered by MIST itself, he did so as a matter of judgment and discretion, not as an admission that he cannot pursue consequential damages sustained through entities he controls. *Cf.* Defs.' Ltr. 5.

(preclusion under Rule 26 is a "drastic remedy" reserved for "flagrant bad faith and callous disregard" for the rules). As set forth in the parties' joint letter submitted upon the reassignment of the case to the Court, Defendants have "held open" discovery past the deadline to obtain nonparty documents by subpoena and re-depose Dr. Pemberton, despite not having sought an extension from the Court to do so. See Dkt. #49 at 6. Defendants cannot simultaneously reserve the right to conduct discovery past the deadline while demanding that Plaintiffs honor the same deadline and disclose an expert based on an incomplete record. Any expert disclosure should be made on the full evidentiary record once fact discovery is completed.

Finally, Defendants' argument that Plaintiffs cannot recover for their criminal attorneys' fees fails. It is undisputed that, because of their prosecution, Dr. Pemberton and Mr. Baptiste, in their personal capacities, each owed $5,000 to criminal attorneys. That Dr. Pemberton chose to pay the fees for both men from a business checking account rather than a personal one (because the incident arose from his performance of his business duties) is immaterial. Either way, he had $10,000 less available to him. Defendants cite no case law suggesting otherwise. Moreover, to the extent the business's payment of the fees were truly considered a third-party payment for Plaintiffs' benefit, Defendants would be barred under the collateral source rule from introducing evidence of it to offset Plaintiffs' damages, just as if the bill had been paid by insurance. *See In re State Street Bank & Trust Co. ERISA Litig.*, 579 F. Supp. 2d 512, 517-18 (S.D.N.Y. 2008); *King v. City of New York*, No. 06-CV-6516, 2007 WL 1711769, at *1 (S.D.N.Y. June 13, 2007).

**Briefing Schedule and Scope of Motion**

The parties have agreed to the following briefing schedule: Defendants' motion due July 3; Plaintiffs' opposition due July 31; Defendants' reply due August 14.

Plaintiffs propose that the Court adopt the suggestion in Footnote 8 of Defendants' pre-motion letter that the impending motion should address: (1) the merits; and (2) the legal question whether Dr. Pemberton can recover consequential damages for lost income or lost profits derived from entities he wholly or partially owns. In Plaintiffs' view, the Court's ruling on the latter issue would promote efficiency by providing significant clarity about what additional discovery concerning Dr. Pemberton's consequential damages is needed. Questions about causation or

EMERY CELLI BRINCKERHOFF & ABADY LLP

Hon. Lorna G. Schofield
May 29, 2020
Page 6

sufficiency of the evidence on consequential damages are better resolved on the full factual record.

            Respectfully submitted,

            /s/ Earl S. Ward

            Earl S. Ward
            Elizabeth S. Saylor

            KAUFMAN LIEB LEBOWITZ
             & FRICK LLP

            Douglas E. Lieb

cc: All counsel of record (by ECF)