Index No. 18-CV-7908 (LGS)

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

DR. CLYDE PEMBERTON, AND CHRISTIAN
BAPTISTE,

                                                    Plaintiff,

                        -against-

CITY OF NEW YORK, et. al.,

                                                    Defendants.

## MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS' MOTION FOR DISMISSAL OF PEMBERTON'S ECONOMIC DAMAGE CLAIMS AND PLAINTIFFS' CRIMINAL ATTORNEYS' FEE CLAIMS

*ZACHARY W. CARTER*
*Corporation Counsel of the City of New York*
*Attorney for Defendants*
*100 Church Street*
*New York, N.Y.  10007*

*Of Counsel:  Elissa Fudim*
*Tel:  (212) 356-2335*
*Matter #:  2016-007047*

Dr. Pemberton was arrested, detained for three hours and fifty-three minutes, and appeared in Court four times over five months in connection with his prosecution. For this, he claims economic damages in the tens of millions of dollars. These damages are not recoverable as a matter of law for two reasons:  proximate cause is lacking and Dr. Pemberton cannot claim corporate losses as his own. Pemberton should also be precluded from seeking these pecuniary loses because he failed to provide a computation of damages as required by Rule 26.

Additionally, Pemberton and Baptiste each claim $5,000 for criminal attorneys' fees. But those sums are not recoverable because they were not paid by Pemberton or Baptiste. Accordingly, the Court should dismiss all of Pemberton's economic damages claims, as well as plaintiffs' claims for criminal attorneys' fees.

## Statement of Relevant Facts and Allegations

On June 2, 2017, Pemberton, Baptiste and Debnam (who has settled his claims) were arrested for false imprisonment. Pemberton was also arrested for serving alcohol to an intoxicated person. Plaintiffs were held in custody for three hours and fifty-three minutes before being released with Desk Appearance Tickets. They appeared in Court on July 31, September 18, November 8, and November 30, 2017 (when the prosecution was dismissed).

The arrests occurred at MIST, a multi-purpose entertainment venue. MIST is a limited liability corporation, sixty percent of which is owned and controlled by New United Corporation ("NUC").[1] The physical property on which MIST is situated is owned by New Full Spectrum ("NFSKC")[2], eighty percent of which today, and thirty-three and a third percent of which on the date of Pemberton's arrest, was also owned and controlled by NUC.[3]   NUC, in turn, is an S-

---

[1] Pemberton Tr. (attached hereto as Ex. A) at 14:6-18, 15:19-22, 123:6-10.
[2] Id. at 122:6-13.
[3] Id. at 127:8-19.

Corporation[4] that holds various real estate assets.[5] Pemberton is the chairman of the board of NUC, and holds approximately forty-nine and a-half percent of its stock.[6]

Pemberton initially claimed that MIST lost business opportunities and revenue as a result of the Incident and subsequent conduct by the NYPD.[7] He later withdrew this claim.[8] Pemberton also previously claimed that because of an inability to enter the heavily regulated gaming industry due to the pending criminal charges, he declined to make an investment in the Ocean Resort Casino in Atlantic City, resulting in economic damages.[9] He later withdrew this claim as well.[10] Pemberton continues to claim that because of restrictions on his ability to travel, disruption to his affairs, and diversion of his attention, he suffered the following economic damages:

- NUC owned property that was condemned and/or involuntarily converted under section 1033 of the Internal Revenue Code in January 2015. To receive tax deferral under section 1033 of the IRS Code, NUC was obligated to purchase replacement property in the amount of $35 million before December 2018. NUC was delayed in acquiring replacement property and did not acquire it as quickly as it otherwise would have, thereby resulting in an unspecified diminished realization of tax deferral benefits under section 1033.[11]

- Pemberton was delayed in coordinating repair of water damage to a condominium property owned by Mepco Investments, Ltd. in Jamaica (the "Sea Castle Property").[12] (Mepco is a corporation, in which Pemberton hold all the shares.)[13]

- Pemberton was delayed in re-renting two rental properties he owns in the Cayman Islands. Id.

- NUC, through a wholly owned subsidiary, was the largest non-institutional shareholder of City National Bank in Newark, NJ. Prior to the Incident,

---

[4] Id. at 18:7-10.
[5] Id. at 19:6-7, 20:17-21.
[6] Id. at 20:22-21:3, 21:12-16.
[7] First Amended Complaint at ¶ 81; Pemberton Interrogatory Response #16 (attached hereto as Ex. B).
[8] See email from August 12, 2019 (attached hereto as Ex. C).
[9] Pemberton Interrogatory Response #16.
[10] See email from November 25, 2019 (attached hereto as Ex. D).
[11] See Interrogatory Response #16; Pemberton Tr. at 114:11-116:8.
[12] See Interrogatory Response # 16; Pemberton Tr. at 144:21-146:17.
[13] Pemberton Tr. at 146:18-147:5.

Pemberton had been in discussions regarding City National Bank serving as the international correspondent bank for the national bank of Trinidad & Tobago. Because of restrictions on his ability to travel outside the country, and the inability to credibly pursue his contacts while facing open criminal charges that were a matter of public record, Pemberton had to stop pursuing international expansion of the bank. Id. The bank is now in receivership by FDIC.

- Pemberton was delayed in acquiring property to pursue development and expansion of a beach resort in San Pedro, Belize. Id.

The criminal court placed no restrictions upon Pemberton's ability to travel outside the country.[14] And Pemberton continued to do business during the pendency of his prosecution[15]. Pemberton claims his ability to travel internationally was impeded because airport security asked him questions when his fingerprints showed he had an open arrest (associated with his status as a green card holder); as a result, Pemberton chose not to pursue unnecessary international travel.[16]

## ARGUMENT

### I.   Pemberton's economic damages are barred because they were not proximately caused by his prosecution.

Pemberton's sweeping economic damage claims are barred because they were not proximately caused by defendants.  "Actions brought under § 1983 are similar to tort actions since they both serve to compensate victims, and '[a] § 1983 action, like its state tort analog[ues], employs the principle of proximate causation.'"  Martin v. City of N.Y., 793 F. Supp. 2d 583, 586 (E.D.N.Y. 2011) (quoting Townes v. City of N.Y., 176 F.3d 138, 146 (2d Cir. 1999)).  The test for proximate cause is whether the defendant's actions were substantial factors in the sequence of causation and whether the injury is reasonably foreseeable or anticipated as a natural consequence of the defendant's conduct. Caraballo v. United States, 830 F.2d 19, 22 (2d Cir. 1987); Hydro Investors, Inc. v. Trafalgar Power Inc., 227 F.3d 8, 15 (2d Cir. 2000). Injuries

---

[14] Pemberton Tr. at 140:11-141:3.
[15] Pemberton Tr. at 172:5-7.
[16] Pemberton Tr. at 174:17-177:19.

are not reasonably foreseeable for proximate cause purposes where the "injuries were different in kind than those which would have normally been expected" from the original wrongdoing. Martin, 793 F. Supp. 2d at 588 (quoting Derdiarian v. Felix Contracting Corp., 51 N.Y.2d 308, 316 (1980)). A court may decide the issue of proximate causation "if it can be determined as a matter of law that the defendant's actions were not the proximate cause of the plaintiff's injuries." Townes 176 F.2d at 147.

Here, Pemberton's economic damage claims are not merely tenuously connected to his prosecution, but completely untethered from it. To be blunt, not only is proximate causation lacking, 'but for' causation is as well.

NUC had four years, from January 2015 to December 2018, to purchase $35 million in real estate in order to obtain a tax benefit. Even accepting, for the sake of argument, that Pemberton's attention "was diverted" during the pendency of his prosecution (June 2 to Nov. 30, 2017), NUC had two and a half years before Pemberton was arrested to make this purchase, and over a year to do so after Pemberton's prosecution was dismissed. NUC also had four members on its board of directors, in addition to Pemberton, who could have taken action on NUC's behalf to take advantage of the tax benefit.[17]   And yet, Pemberton blames defendants for NUC's failure to exhaust its $35 million purchasing power. This blame is not only factually misplaced, but legally misplaced too.[18]

Neither defendants, nor any reasonable person, could foresee that as a result of prosecuting Pemberton for a misdemeanor, an unknown corporation would be unable to realize

---

[17] Pemberton Tr. at 20:22-21:8.

[18] See e.g. Kiswani v. Phoenix Sec. Agency, Inc., 247 F.R.D. 554, 561 (Bankr. N.D. Ill. 2008) ("Plaintiff claims that the arrest and prosecution caused his company, NSA, to lose a five-year contract for security services with the CTA. . . . This claim is totally speculative. Plaintiff has put forth no evidence to demonstrate the arrest and prosecution was the legal cause of his inability to secure this contract, nor has he shown that this was a foreseeable consequence to his arrest and prosecution.").

the full value of tax deferral benefits by purchasing real property during a four year period - more than half of which preceeded Pemberton's arrest. "To hold otherwise ... would make the arresting officers responsible for any misfortune befalling an [] arrestee following a claimed false arrest. Well-engrained principles of causality do not countenance such a result." Martin, 793 F. Supp. 2d at 589 (granting summary judgment on plaintiff's damages claim stemming from a prison assault by another inmate).

Pemberton's other alleged economic damages fare no better in terms of foreseeability. Pemberton claims that in or about July 2017, a month after he was arrested, he learned that that the Sea Castle Property had leaking pipes. He claims he was unable to attend to the leak because of his inability to travel to Jamaica, thereby leading to further damage to the property.[19] The causation problems here are multiple. Putting aside the obvious, that Pemberton could have hired someone in Jamaica to attend to the pipes, Pemberton's claim that he could not travel internationally in July 2017 is untrue; in fact, he was travelling internationally at that time – he was in Nicaragua and Belize.[20] Thus, as a purely factual matter, Pemberton cannot establish any causal link between his prosecution and the damage to the Sea Castle Property.

So too with respect to Pemberton's claim that he could not expand a hotel in Belize because of his inability to travel internationally coupled with his diverted attention; in fact, Pemberton travelled to Belize three times during the five months of his prosecution.[21] More to the point, with respect to both his Belize and Jamaica claims, Pemberton certainly cannot establish that defendants were the proximate cause of any alleged economic damages. Similarly, Pemberton cannot establish that defendants proximately caused his delay in renting two properties in the Cayman Islands, particularly as he had a local management company that could

---

[19] Pemberton Tr. at 147:16-148:14.
[20] Pemberton Tr. at 148:15-18.
[21] Pemberton Tr. at 141-25:142:6, 143:4-7, 144:6-8.

have handled rentals and he was in fact travelling during the pendency of his prosecution.[22]

Perhaps even more attenuated (if that is possible) is Pemberton's claim that defendants are responsible for City National Bank in Newark not becoming the international correspondent bank for the national bank of Trinidad & Tobago.  To suggest that defendants, or any reasonable person, should have foreseen these alleged damages is to take the word 'foreseeable' and give it an entirely different meaning.

Since proximate cause (not to mention actual cause) is plainly absent, the Court should dismiss Pemberton's economic damage claims.

## II.    Pemberton's economic damages are barred because Section 1983 does not recognize derivative damages and a shareholder cannot claim corporate damages as his own.

Pemberton's alleged economic damages that derive from losses to NUC and MEPCO are not recoverable because there is a "presumption of separateness between a corporation and its owners". American Protein Corp. v. AB Volvo, 844 F.2d 56, 60 (2d Cir. 1988).  Stated differently, for the NUC and Mepco losses claimed by Pemberton to be recoverable, two legal propositions would have to be true:  first, that a corporation can suffer compensable damages as a result of the violation of the constitutional rights of one of its shareholders; and second, that if a corporation does suffer compensable damages, an individual shareholder can sue for them. Neither proposition is correct.

Section 1983 does not allow derivative damage claims. Donohue v. Wing, No. 17-CV-3870 (JMA) (AKT), 2018 U.S. Dist. LEXIS 140812, at *31 (E.D.N.Y. Aug. 17, 2018) ("To the extent [plaintiff] is asserting her individual cause of action as a derivative claim, that claim fails

---

[22] Also, the claim that he suffered lost rental income for these properties is refuted by documents produced by Pemberton in discovery showing that there was no diminishment in rental income received from these properties. At his deposition, Pemberton claimed the documents he previously produced were inaccurate, and that he had demanded and received replacement documents from the management company for those properties. Defendants called for their production; to date, Pemberton has not produced them. Pemberton Tr. 153:16-156:8.

because derivative claims are 'not cognizable under § 1983 since such claims do not involve 'an injury based on a deprivation of the plaintiff's rights, privileges, and immunities.''"); <u>T.P. v. Elmsford Union Free Sch. Dist.</u>, No. 11 CV 5133 (VB), 2012 U.S. Dist. LEXIS 38500, at *7-8 (S.D.N.Y. Feb. 27, 2012) ("[§] 1983 does not recognize a claim on behalf of one person arising from a violation of another person's rights" and holding that the plaintiff "c[ould not] recover on any derivative claim based on a Section 1983 civil rights [violation]"); <u>Gabriel v. Cty. of Herkimer</u>, 889 F. Supp. 2d 374, 405 (N.D.N.Y. 2012) ("Section 1983 does not recognize a claim on behalf of one person arising from a violation of another person's rights."). Thus, neither NUC nor MEPCO can recover damages as a result of an alleged civil rights violation to Pemberton.

NUC and MEPCO would be entitled to damages for a civil rights violation only if their own civil rights were violated.[23] But, if that were the case, Pemberton would not be entitled to sue for his share of such damages. "An individual plaintiff cannot bring a civil rights claim for damages suffered by a corporation." <u>Colon v. Maddalone</u>, No. 95 Civ. 0008 (JGK), 1996 U.S. Dist. LEXIS 14380, at *7 (S.D.N.Y. Sept. 23, 1996) (citing <u>Jones v. Niagara Frontier Transp. Auth.</u>, 836 F.2d 731, 736 (2d. Cir. 1987), <u>cert. denied</u>, 488 U.S. 825 (1988)); <u>see Erlich v. Glasner</u>, 418 F.2d 226, 227 (9th Cir. 1969) (stockholder may not maintain a civil rights action under 42 U.S.C. § 1983 for damages suffered by the corporation); <u>Sirinakis v. Colonial Bank</u>, 600 F. Supp. 946, n.10 (N.D.N.Y. 1984) ("The law is clear that plaintiff, even as president and principal shareholder of the shipping companies, may not claim the companies' damages as his own."); <u>see also</u> <u>Terry v. Yancey</u>, 344 F.2d 789, 790 (4th Cir. 1965) (sole stockholder of a

---

[23] A corporation can bring a § 1983 claim. <u>See</u> <u>Sterngass v. Bowman</u>, 563 F. Supp. 456, 459 (S.D.N.Y. 1983) (citing <u>Smith v. Martin</u>, 542 F.2d 688, 690 (6th Cir. 1976) <u>cert. denied</u>, 431 U.S. 905 (1977) and <u>Fulton Market Cold Storage Co. v. Cullerton</u>, 582 F2d 1071, 1079 (7th Cir. 1978), <u>cert. denied</u>, 439 U.S. 1121 (1979)).

corporation may not recover individually for corporation's expense of hiring surrogate because of stockholder's disability resulting from auto accident).

The rationale behind this legal principle is rooted in the fundamentals of corporate law. The corporate form is advantageous because it limits personal liability. American Protein Corp. v. AB Volvo, 844 F.2d 56, 60 (2d Cir. 1988).  A shareholder, who has taken advantage of the corporate form's protections, cannot disregard its mantel to claim benefits inconsistent with the protections he has enjoyed.[24]

Here, Pemberton's economic damage claims fail because NUC and MEPCO are not entitled to derivative damages, and even if they were entitled to § 1983 damages, Pemberton cannot sue for them.

## III.    Pemberton's economic damages are also barred because he did not comply with his Rule 26 obligations.

Fed. R. Civ. P. 26 requires a computation of each category of damages, which includes a dollar amount, some analysis for how that figure was determined, as well as "the documents or other evidentiary material …on which each computation is based." F.R.C.P. 26(a)(1)(A)(iii). Pemberton did not provide that computation in his initial disclosures, nor in response to a specific interrogatory calling for that computation. This failure to provide a computation of damages and the supporting documents resulted in a motion to compel by defendants. See D.E. # 35. In response, plaintiffs argued that Pemberton did not need to provide a computation of damages because he intended to call an expert, and could provide that information in an expert report. See D.E. # 37. Magistrate Judge Aaron denied defendants' motion, finding Pemberton could fulfil his disclosure obligation via an expert report. See D.E. # 39. However, discovery is

---

[24] Indeed, if Pemberton could recover damages for injuries allegedly sustained by NUC as a result of Pemberton's prosecution, could NUC's other shareholders likewise have joined this action and claimed their share of NUC's purported damages? Clearly, the answer is no. Pemberton is no different.

closed, and Pemberton never submitted an expert report. Pemberton has argued that his time to do so has not expired because discovery was held open for certain financial documents that had not yet been produced. <u>See</u> D.E. # 60. But that argument ignores the fact that these documents belong to Pemberton; they include his tax returns, and rent rolls.[25] Certainly, defendants might argue that they are unable to engage in expert discovery because they are still awaiting documents from Pemberton, but Pemberton cannot enjoy the benefit of his own discovery failures, particularly when he has had these documents from the outset. Accordingly, he has failed to comply with his discovery obligations under Rules 26, 33, 34 and 37, and should be barred from seeking any of these pecuniary or computable damages. <u>See e.g.</u>, <u>Kodak v. E.I. Du Pont De Nemours</u>, 08-CV-6553-FPG, N.Y.L.J. 1202625908600, at *1 (W.D.N.Y., Oct. 22, 2013) (granting motion *in limine* to exclude six million in economic damages not disclosed in Rule 26 disclosure).

## IV.    Plaintiffs' claims for criminal attorneys' fees are barred because they did not pay them.

It is self-evident that a party cannot recover for damages it did not sustain. Neither Pemberton nor Baptiste incurred any cost for criminal attorneys' fees.[26]  Rather, NUC paid the fees, <u>id</u>, and presumably deducted them against income as a business expense.  While Pemberton characterized the payment by NUC as a "loan", neither Pemberton nor Baptiste repaid NUC, and NUC did not deduct these payments as unpaid "loans" on its tax returns.[27]  And, neither Pemberton nor NUC conveyed any expectation of repayment to Baptiste (or Debnam, whose

---

[25] Pemberton claimed that a number of financial documents he turned over through his attorneys (including his tax returns) were neither authentic nor accurate. Defendants demanded that Pemberton provide authentic and accurate documents to replace those he claimed were neither. He has not done so despite the passage of more than six months. In addition, at his deposition Pemberton claimed that a number of financial documents, which he had previously not disclosed, were necessary in order to understand his damages claim. Those documents were also demanded, but have not been turned over. Pemberton Tr. at 124:23-126:23, 129:10-130:3, 153:16-156:8, 163:14-165:16, 170:10-171:22.

[26] Pemberton Tr. 105:16-106:2, 108:15-20.

[27] Pemberton Tr. at 106:9-16, 108:15-20, 110:17.

attorneys' fees were also paid by NUC).[28]   Accordingly, plaintiffs cannot claim attorneys' fees damages when they cannot show they personally incurred any such expense.

## CONCLUSION

Pemberton's economic damages are so plainly not recoverable that one must wonder if they were sought in good faith or solely to multiply this litigation and artificially inflate the value of settlement by creating onerous discovery.  Indeed, the Court would be well within its inherent authority to sanction Pemberton's counsel for bringing plainly frivolous damage claims, which resulted in discovery expenses to defendants. If this Court were to permit Pemberton's economic damages claims to proceed then there would ostensibly be no limit to the damages that a malicious prosecution plaintiff could claim. But fortunately this Court can act as a gatekeeper. Pemberton's economic damages should be barred for an obvious lack of proximate causation – not to mention that Pemberton failed to meet his disclosure obligations under Rule 26. The majority of Pemberton's economic damages are also not recoverable because they are derivative damages not cognizable under § 1983, and Pemberton cannot sue as a shareholder for corporate damages in any event. Plaintiffs' claims for criminal attorneys' fees are likewise not subject to recovery because they never incurred these fees. The Court should not hesitate to dismiss Pemberton's economic damage claims and plaintiffs' claim for criminal attorneys' fees.

DATED: New York, New York
      June 12, 2020

                JAMES E. JOHNSON
                Corporation Counsel of the City of New York
                Attorney for Defendants
                100 Church Street
                New York, New York 10007
                efudim@law.nyc.gov

                By:  *Elissa P. Fudim*
                    Elissa P. Fudim

---

[28] Pemberton Tr. at 108:21-109:13.