Index No. 18-CV-7908 (LGS)

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

DR. CLYDE PEMBERTON, AND CHRISTIAN BAPTISTE,

                                                                         Plaintiff,

-against-

CITY OF NEW YORK, et. al.,

                                                                           Defendants.

**REPLY MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS' MOTION FOR DISMISSAL OF PEMBERTON'S ECONOMIC DAMAGE CLAIMS AND PLAINTIFFS' CRIMINAL ATTORNEYS' FEE CLAIMS**

*JAMES E. JOHNSON*
*Corporation Counsel of the City of New York*
*Attorney for Defendants*
*100 Church Street*
*New York, N.Y.  10007*

*Of Counsel:  Elissa Fudim*
*Tel:  (212) 356-2335*
*Matter #:  2018-067506*

Pemberton's opposition widely misses the mark. He tries to paint himself as an 'eggshell skull' plaintiff, arguing defendants must "take [him] as they find him" and are responsible for the "natural consequences" of their conduct, which includes recovery of his so-called "business portfolio." But Pemberton frames the issue incorrectly. The issue is not whether these pecuniary losses are recoverable as a category of damages; the issue is whether Pemberton's pecuniary losses were proximately caused by his prosecution. Pemberton ignores that issue entirely, even though the burden of proving proximate causation is Pemberton's; defendants' do not have to prove its negative. This is the big picture problem with Pemberton's opposition. The minutiae fair no better.

## I. Pemberton Misstates the Burden Of Proof as to His Damage Claims.

Pemberton is correct that, if viewed as a motion for summary judgment, defendants have the burden of showing that there are no disputed issues of fact which preclude the Court from granting relief as a matter of law – which defendants have shown. But that does not change the fact that Pemberton bears the burden of proving that his alleged damages were proximately caused by his prosecution. Miner v. City of Glens Falls, 999 F.2d 655, 660 (2d Cir. 1993) ("the burden is normally on the plaintiff to prove each element of a § 1983 claim, including those elements relating to damages"). Thus, contrary to Pemberton's argument, defendants do not have to prove the negative - "that their conduct did not proximately cause Dr. Pemberton's business losses". Pl. Opp. at 3.[1] Pemberton failed to meet his burden. That failure is not attributable to the Court's imposed page limit, the Court's direction not to file a 56.1 Statement, or a lack of discovery; that failure is attributable to the utter lack of evidence connecting Pemberton's claimed damages to his prosecution, as well as a lack of legal precedent for the relief he seeks.

---

[1] See also Pl. Opp. at 6 ("[defendants] certainly do not prove that there is *no* genuine dispute of material fact that their conduct did *not* cause a delay in the repairs.")

**II.     Pemberton's Damages Were Not Proximately Caused By His Prosecution.**

A proximate cause analysis focusses on the links in a chain of events to determine remoteness or proximity. Tolentino v. City of Yonkers, No. 15 CV 5894 (VB), 2017 U.S. Dist. LEXIS 162392, at *15 (S.D.N.Y. Oct. 2, 2017). Pemberton fails to address the links in the chain of causation between his prosecution and the pecuniary damages he seeks. He focuses only on the category of damages he seeks, arguing that lost income is a foreseeable category of damages that can be recovered in a claim for malicious prosecution. Pl. Opp. at 3-4. But Pemberton is not claiming simple lost income; he is claiming the diminution in value of various assets, mostly third-party corporate assets, through a convoluted maze of alleged cause and effect.

Pemberton is claiming that A (his prosecution) caused B (restrictions on his ability to travel outside the country) and C (distraction), which together caused D (Pemberton and his companies not to make certain investments or expenditures), which caused E (a diminution in value of the corporation or asset), which caused F (a decrease in income to Pemberton). Pemberton has not offered the Court any case law that would permit a finding of proximate cause in such an attenuated multi-step progression of causation.

Knox v. Cty. of Putnam does not stand for that proposition.[2] In Knox, plaintiff owned a bar called the Paddock. An off-duty employee went to the Paddock for food and later got into a car accident, killing another woman as well as herself. Witnesses at the Paddock told police, and later falsely testified at trial, that plaintiff permitted his off-duty employee to get drunk, and knew she was drunk when she left in her vehicle. Local media coverage was extensive. Plaintiff was convicted of violating dram shop laws and served five months in prison before his conviction was vacated. In the interim, the negative publicity of the witnesses' allegations caused

---

[2] Knox v. Cty. of Putnam et. al., 2014 U.S. Dist. LEXIS 102013, at *6-12 (S.D.N.Y. July 23, 2014). The citation provided by Pemberton is a citation to the District Court's adoption of the Magistrate Judge's Report and Recommendation. The substance of the decision, however, appears in the R&R, to which defendants have cited.

the Paddock to go out of business. Plaintiff sued the witnesses for knowingly providing false information. Id., 2014 U.S. Dist. LEXIS 102013, at *6-12. These witnesses defaulted, and on a damages' inquest, the Court considered whether the economic damages plaintiff claimed (lost income from the Paddock, and the foreclosure of his home) were recoverable. Id.

Pemberton claims that the Knox Court held that plaintiff was "legally entitled" to these damages, though it declined to award them because plaintiff had failed to sufficiently quantify them. Plaintiff mischaracterizes the holding of Knox. The Knox Court did not find that plaintiff was "legally entitled" to the economic damages he claimed, or that proximate cause was established (the issue for consideration here). Rather, the Court disposed of plaintiff's economic damage claim without considering proximate cause because plaintiff "presented no evidence concerning Knox's income, the value of his business or its assets, or the value or equity in Plaintiffs' home." Knox, at *13.[3] Further, the facts of Knox and this case do not run parallel. The plaintiff in Knox claimed A (false statements made by the defendants) caused B (his bar to close), which caused C (economic injury). As set forth above, Pemberton's argument has many more links in the chain of causation - several of which are not even true.

Pemberton's damage claims are predicated on the asserted fact that there were "restrictions on plaintiff's ability to travel outside the country". See Ex. B (Pemberton's Interrogatory Responses, #16). But that is not true. The Court placed no restrictions on Pemberton's travel. Pemberton admits he voluntarily curtailed his international travel after an immigration official commented upon his open arrest when he was re-entering the country from a trip to Belize. Pl. Opp. at 5. Pemberton explains that he then sought legal advice and was told that his entry into the U.S. by Immigration on any given occasion would be purely discretionary.

---

[3] Moreover, no argument was made to the Court that proximate cause was lacking because the defendants defaulted and never filed any objections to the plaintiff's proposed findings of fact and conclusions of law. The Court adopted the facts as presented by plaintiff in his complaint and unopposed proposed findings of fact and conclusions of law. Id. at *7, FN 4; see also Docket 10-cv-01671-ER-PED.

3

Pl. Opp. at 5.[4] As a result, Pemberton then decided to limit his international travel. Id. That voluntary choice breaks the chain of causation. Zarlin v. Air Fr., No. 04-CV-07408 (KMK), 2007 U.S. Dist. LEXIS 66288, at *15 (S.D.N.Y. Sep. 6, 2007) ("Plaintiff's claim for damages depends on a putative chain of causation that was broken by Plaintiff's affirmative choice and the correlative power it entailed to avoid her alleged injury.) Indeed, at the very least, Pemberton's admitted choice to curb his international travel adds links to the causal chain. He now claims:  A (his prosecution) caused B (him to be flagged at immigration), which caused C (Pemberton to be concerned that he might be denied entry on future trips), which caused D (him to choose to curtail his international travel), which combined with E (his distraction), caused F (Pemberton or his companies not to make certain investments or expenditures), which caused G (a diminution in value of the corporation or asset), which caused H (a decrease in income to Pemberton). And, if that's not convoluted enough, link F also does not survive scrutiny.

For example, Pemberton makes no attempt to explain how NUC's failure to exhaust its $35 million real estate tax benefit in a four-year period was caused - proximately or otherwise - by Pemberton's voluntary reduction of travel during the five months of his prosecution[5], or his "distraction". He makes no attempt because there is no reasonable explanation to be offered.[6] Instead he deflects by claiming that defendants' motion "strays far beyond the scope of briefing ordered by the Court" (Pl. Opp. at 4), and complaining that defendants unfairly address "detailed factual issues on an incomplete record". Pl. Opp. at 4-5. Pemberton's accusations are not only silly, but ironically so. The only evidence that defendants cited in their motion are statements

---

[4] The substance of this legal advice is inadmissible hearsay. Plaintiff also attaches to his motion an email he sent to Global Entry claiming that he was told that his Global Entry was rejected because of his arrest. This is double hearsay. Also, as a practical matter, one can enter the U.S. without Global Entry.

[5] Particularly as NUC could have purchased property in the United States.

[6] Likewise, he fails to explain how his prosecution caused City National Bank in Newark to not become the international correspondent bank for the national bank of Trinidad & Tobago. In fact, he has not even shown that he directly sustained a monetary loss from this lack of association (specifically calculated or otherwise). So too with the Sea Castle Property in Jamaica, and his properties in the Cayman Islands, and his resort expansion in Belize.

Pemberton made in response to interrogatories and at his deposition. There can be no dispute of fact as to these statements as they are Pemberton's own. Further, the outstanding discovery – which is outstanding from Pemberton to defendants[7] – concerns the quantification of Pemberton's damages, not the facts upon which they rest.[8] Tellingly, Pemberton has not pointed to any fact that defendants recited that he disputes (with or without evidence) other than that he was in Belize twice, not three times during the pendency of his prosecution – a distinction without a difference. In short, Pemberton has not met his burden of showing that his alleged economic damages were proximately caused (or even actually caused) by defendants. And, though the burden is not theirs, defendants have indeed shown a lack of proximate cause. The Court should not hesitate to dismiss Pemberton's untethered pecuniary damage claims.

### III. Section 1983 Does Not Recognize Derivative Damages And A Shareholder Cannot Claim Corporate Damages As His Own.

Plaintiff argues that "[a] § 1983 plaintiff can recover lost income in the form of salary or wages paid by nonparty corporations." Pl. Opp. at 7. True, but that is not the issue. Pemberton is not seeking lost salary or wages paid to him by his employer. Further, the cases Pemberton cites in support of his argument are totally irrelevant: In Johnson v. City of N.Y., 2019 U.S. Dist. LEXIS 131841, at *13 (E.D.N.Y. Aug. 2, 2019), the Court held that plaintiff, a real estate agent, was entitled to compensation for a commission he lost as a result of his prosecution, as well as money he would have earned from teaching two courses, Id. at *11 -- in other words, a fairly typical lost income/earnings claim. The plaintiff in Johnson was not seeking damages from a devaluation of a corporation in which he held shares. The case has zero application here.

---

[7] Pemberton repeatedly refers to "the parties' mutual disregard" of discovery deadlines. Pl. Opp. at 8. There was no "mutual" disregard. Every document whose production remains outstanding was requested by defendants long before the discovery deadline in this case.

[8] And interestingly, even in response to this motion, Pemberton still has not produced these documents, which he claims would support his position. Covid is no excuse. The documents are Pemberton's own – tax returns, rent rolls -- documents which exist electronically.

5

Likewise, Genovese v. Cty. of Suffolk, 128 F. Supp. 3d 661, 681 (E.D.N.Y. 2015) is irrelevant. It concerned post-trial remittitur, and neither the words "income" nor "corporation" appear anywhere the decision. It certainly does not address whether a plaintiff can personally claim derivative damages to a corporation in which he is shareholder. Knox is also not instructive here. Pl. Opp. at 7. Plaintiff falsely claims that in Knox "[t]he court acknowledged that the loss of the plaintiff's business and its assets, the income derived from it, and the plaintiff's home, were compensable injuries." Id. But, as set forth above, the Court never made such a finding. It did not even hear argument on this issue. Pemberton has not cited to a single case where a Court has permitted a plaintiff in a civil rights action to recover lost income as a result of corporate losses. There is a reason there are no such cases.

## IV. NUC's Payment of Attorney's Fees Was Gratuitous.

Plaintiffs claim that they are entitled to recover the $10,000 of criminal attorneys' fees paid on their behalf by NUC under the collateral source rule. Pl. Opp. at 9-10. But that ignores New York's exception to the collateral source rule for gratuitous "payments received by an injured party for which he or she gave no consideration and was under no obligation to repay". Siracuse v. Program for the Dev. of Human Potential, No. 07 CV 2205 (CLP), 2012 U.S. Dist. LEXIS 73456, at *38 (E.D.N.Y. Apr. 30, 2012). Here, NUC's payment was purely gratuitous as it did not declare the payments as loans on its tax returns, no consideration was given for the payment, and there is no document requiring repayment.[9] Furthermore, the circumstances of this case are distinct from the insurance context, where application of the collateral source rule normally prevents a defendant from receiving the benefit of a plaintiff's insurance for which the plaintiff paid consideration through premiums.  Application of the collateral source rule here would give Plaintiffs a windfall – a recovery for damages they never actually sustained.

---

[9] Moreover, even if Pemberton were to now repay the $10,000 to NUC as he claims he intends to do, the payment of such fees would still be gratuitous, because he is "not obligated to repay".

## **CONCLUSION**

There is no legal authority for Pemberton to recover the untethered damages he seeks. Proximate cause is clearly lacking, and actual cause is questionable, at best. Pemberton also has not offered the Court any authority for the proposition that he can claim derivative damages to a corporation in which he is a shareholder. He also should be precluded from asserting pecuniary damages that he failed to quantify in his Rule 26 disclosures or via an expert report during discovery. Plaintiffs' claims for criminal attorneys' fees are likewise not recoverable because they were gratuitously paid by NUC without any consideration or requirement of repayment.

DATED: New York, New York
      July 9, 2020

                              JAMES E. JOHNSON
                              Corporation Counsel of the City of New York
                              Attorney for Defendants
                              100 Church Street
                              New York, New York 10007
                              efudim@law.nyc.gov

                              By: *Elissa P. Fudim*
                                   Elissa P. Fudim