UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------ X
                                                             :
CLYDE PEMBERTON, et al.,                                     :
                                        Plaintiffs,          :           18 Civ. 7908 (LGS)
                                                             :
                  -against-                                  :           OPINION AND ORDER
                                                             :
THE CITY OF NEW YORK, et al.,                                :
                                        Defendants.          :
------------------------------------------------------------ X

LORNA G. SCHOFIELD, District Judge:

Plaintiffs Dr. Clyde Pemberton and Christian Baptiste (collectively, "Plaintiffs")[1] seek damages from the City of New York (the "City") and two members of the New York Police Department -- Police Officer Anthony Sengco and Lieutenant Khandakar Abdullah -- for false arrest and malicious prosecution among other claims. These claims arise from an incident at MIST, a bar that Plaintiff Pemberton owned and at which Plaintiff Baptiste worked, where at least one patron claimed that she and her friends had been prevented from leaving by Plaintiff Baptiste, at Plaintiff Pemberton's command. Plaintiffs were arrested for false imprisonment based on these claims. Defendants move for summary judgment. For the reasons below, the motion is granted in part and denied in part.

I.    BACKGROUND

The pertinent facts below are drawn from the parties' Rule 56.1 statements and other submissions on this motion. The facts are either undisputed or based on evidence in the record drawing all reasonable inferences in favor of Plaintiffs, the non-moving parties.

---

[1] A third plaintiff, Thomas Debnam, is no longer a party following a settlement.

MIST is a multi-purpose entertainment venue, which contains a bar, café, restaurant and event space.  On June 1, 2017, E. Levin, L. Mears and G. Allard went to MIST and became intoxicated, with Ms. Allard apparently becoming severely intoxicated.  Plaintiff Pemberton, the MIST owner and a physician, directed MIST staff to call an ambulance for Ms. Allard, and told them that Ms. Allard should remain on the premises until the ambulance arrived.  The parties dispute whether Plaintiff Pemberton directed the MIST staff to detain Ms. Levin and Ms. Mears, and whether the MIST staff did so.  A verbal and physical altercation ensued.  Ms. Levin and Ms. Mears assaulted MIST staff, Ms. Levin punched Plaintiff Pemberton in the chest, and the women used racial slurs against Plaintiff Pemberton and MIST staff.  Numerous calls were made to 911.  An ambulance arrived at MIST, followed by Defendant Sengco and his partner, followed by Defendant Abdullah (who was then a police Captain) with his partners.  Ms. Allard was removed to the ambulance.  Ms. Levin and Ms. Mears were escorted out of MIST by officers.

Defendant Abdullah spoke with Ms. Levin outside of MIST, who told him that Plaintiff Baptiste and another MIST staff member had physically prevented her from leaving MIST.  Defendant Abdullah then approached Plaintiff Pemberton and said, "She said you prevented her from leaving" and arrested him.  Although there seems to be some dispute about whether Defendant Abdullah spoke with Ms. Levin or Ms. Mears, Plaintiff Pemberton identified her as Ms. Levin in a nearly contemporaneous email.

Defendant Abdullah directed Defendant Sengco and his partner to arrest Plaintiffs and Ms. Levin.  Ms. Levin was arrested for assaulting Plaintiff Pemberton.  Plaintiffs were arrested and prosecuted for unlawful imprisonment in the second degree.  The criminal prosecutions were dismissed and sealed at Plaintiffs' fourth court appearance.

**II.    STANDARD**

Summary judgment is appropriate where the record establishes "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  There is a genuine dispute as to a material fact "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *accord Nick's Garage, Inc. v. Progressive Cas. Ins. Co.*, 875 F.3d 107, 113-14 (2d Cir. 2017).  A court must construe the evidence in the light most favorable to the nonmoving party and must draw all reasonable inferences in favor of the nonmoving party. *Liberty Lobby*, 477 U.S. at 248; *Soto v. Gaudett*, 862 F.3d 148, 157 (2d Cir. 2017).  "It is not the province of the court itself to decide what inferences should be drawn," and "if there is any evidence in the record from any source from which a reasonable inference could be drawn in favor of the nonmoving party, summary judgment is improper." *Vivenzio v. City of Syracuse*, 611 F.3d 98, 106 (2d Cir. 2010); *accord Figueroa v. W.M. Barr & Co., Inc.*, No. 18 Civ. 11187, 2020 WL 5802196, at *1 (S.D.N.Y. Sept. 29, 2020).  When the movant has properly supported its motion with evidentiary materials, the opposing party may only establish a genuine issue of fact by "citing to particular parts of materials in the record." Fed. R. Civ. P. 56(c)(1)(A).  "[A] party may not rely on mere speculation or conjecture as to the true nature of the facts to overcome a motion for summary judgment." *Hicks v. Baines*, 593 F.3d 159, 166 (2d Cir. 2010) (alteration in original); *accord Pierre v. City of N.Y.*, 844 F. App'x 411, 413 (2d Cir. 2021) (summary order).  To prevail on a § 1983 claim, Plaintiff must show "the violation of a right secured by the Constitution and laws of the United States" and that "the alleged deprivation was committed by a person acting under color of state law." *Jones v. Cty. of Suffolk*, 936 F.3d 108, 114 (2d Cir. 2019) (citation omitted).

### III. DISCUSSION

Defendants move for summary judgment on all claims in the First Amended Complaint ("FAC"). Plaintiff does not oppose dismissal of the following claims -- excessive force, assault and battery, and negligent hiring, training and supervision against the City (the Third, Seventh and Eighth and Ninth causes of action, respectively).

The remaining claims at issue on this motion assert false arrest and false imprisonment under federal and state law, malicious prosecution under federal and state law and failure to intervene under federal law. The federal claims allege constitutional violations under 42 U.S.C. § 1983. The state claims allege violations of New York common law. All claims are asserted against Defendants Abdullah and/or Sengco. The state law claims are also asserted against the City on a theory of *respondeat superior*. Defendants also seek summary judgment on Plaintiffs' demands for punitive damages and recovery of attorneys' fees incurred in their defense of their wrongful arrest and prosecution. Each of these matters is addressed in turn below.

**A.  False Arrest and Malicious Prosecution (First, Second, Fifth, and Sixth Causes of Action)**

Defendants move for summary judgment on the causes of action for false arrest and malicious prosecution under § 1983 and New York common law. Defendants' motion is denied because questions of fact preclude summary judgment.

**1.  Applicable Law – Probable Cause and Arguable Probable Cause**

Claims for false arrest under § 1983 and state law are substantially the same. *See Ashley v. City of N.Y.*, 992 F.3d 128, 136 (2d Cir. 2021). Probable cause is a complete defense to an action for false arrest and malicious prosecution. *Id.* at 136, 138. Probable cause exists "when the arresting officer has knowledge or reasonably trustworthy information of facts and circumstances that are sufficient to warrant a person of reasonable caution in the belief that the

4

person to be arrested has committed or is committing a crime." *Figueroa v. Mazza*, 825 F.3d 89, 99 (2d Cir. 2016) (quoting *Escalera v. Lunn*, 361 F.3d 737, 743 (2d Cir. 2004)) (internal quotation marks omitted).  Probable cause exists if a law enforcement officer receives information "from some person, normally the putative victim or eyewitness, unless the circumstances raise doubt as to the person's veracity." *Betts v. Shearman*, 751 F.3d 78, 82 (2d Cir. 2014); *accord Tortora v. City of N.Y.*, 804 F. App'x 35, 37 (2d Cir. 2020) (summary order).

"An officer is entitled to qualified immunity from a federal false arrest and imprisonment claim if he had arguable probable cause to arrest the plaintiff for any offense, regardless of the offense with which the plaintiff was actually charged." *Kass v. City of N.Y.*, 864 F.3d 200, 206 (2d Cir. 2017).  "Arguable probable cause exists when it was objectively reasonable for the officer to believe that probable cause existed, or . . . officers of reasonable competence could disagree on whether the probable cause test was met." *Id.* (internal quotation marks omitted) (ellipses in original).  Summary judgment may be granted on the basis of qualified immunity only if the facts necessary to find qualified immunity are undisputed.  *Sloley v. VanBramer*, 945 F.3d 30, 44 (2d Cir. 2019) (remanding for trial including on the issue of qualified immunity where a fact central to a finding of qualified immunity was in dispute); *Gatling v. West*, 850 F. App'x 91, 96 (2d Cir. 2021) (summary order).

### 2. The Arrest of Pemberton

Defendants seek summary judgment on the false arrest and malicious prosecution claims on the grounds that they had probable cause and arguable probable cause to arrest Plaintiffs for

5

unlawful imprisonment in the second degree and criminal solicitation in the fifth degree in violation of New York Penal Law.[2] *See* N.Y. Penal Law §§ 135.05 & 100.00.

Here, the undisputed evidence shows that Ms. Levin told Defendant Abdullah that Plaintiff Pemberton had prevented her from leaving MIST. Nevertheless, there is a question of fact whether the circumstances raised doubt as to her veracity. As recounted in Plaintiff Pemberton's nearly contemporaneous email, the "senior officer," Defendant Abdullah spoke with Ms. Levin[3] out of Plaintiff Pemberton's earshot. Defendant Abdullah then approached Plaintiff and "[w]ithout a question to me, he states, 'she said you prevented her from leaving.'" In response to Defendant Abdullah's question, Plaintiff Pemberton confirmed that he was the owner of MIST. Defendant Abdullah then ordered Plaintiff Pemberton's arrest. Plaintiff Pemberton testified at his deposition that the email is accurate. *See Cleveland v. Policy Mgmt. Sys. Corp.*, 526 U.S. 795, 806 (1999) ([A] party cannot create a genuine issue of fact sufficient to surviving summary judgment simply by contradicting his or her own previous sworn statement . . . ."); *accord Daniels v. City of N.Y.*, No. 15 Civ. 2251, 2016 WL 4368378, at *6 (S.D.N.Y. Aug. 14, 2016).

---

[2] Defendants have abandoned their argument that they had arguable (but not actual) probable cause to arrest Plaintiff Pemberton for a misdemeanor violation of the Alcoholic Beverage Control Law § 65 by not defending it in their Reply Memorandum. *See, e.g., In re Gen. Motors LLC Ignition Switch Litig.*, 477 F. Supp. 3d 170, 179 n.2 (S.D.N.Y. 2020). The argument also fails on the merits in light of the clear law established in *People v. Byrne*, 77 N.Y.2d 460, 465, 468 (1991) (holding that a person can violate § 65 only through his own conduct and not through the conduct of another person with whom he has a business relationship).

[3] Plaintiff Pemberton's email describes her as "Assailant #1" and further describes "Assailant #1" as the person "who perpetrated the assault on me and others" and whom he later sees at the 28th precinct after the Plaintiffs were arrested. The record is clear that Ms. Levin was the MIST patron who was arrested.

Whether Ms. Levin's accusation that Plaintiff Pemberton prevented her from leaving should have been viewed as reliable by a person of reasonable caution is a question of fact for the jury. Defendant Sengco was called to the scene and was aware of numerous 911 calls. The calls reported intoxication and/or assaultive behavior by one or more female patrons. When they arrived, the police observed three drunk women. One woman (Ms. Allard) was so drunk she was lying incapacitated on the floor and taken away in an ambulance. The other two (Ms. Mears and Ms. Levin) were yelling, screaming and using racially derogatory language. Ms. Levin was sufficiently agitated that she physically assaulted members of MIST staff, punched Plaintiff Pemberton in the chest and was arrested for assault. Before she was arrested, Ms. Levin and Defendant Abdullah had the conversation described above leading to Plaintiff Pemberton's arrest. In his nearly contemporaneous email, Plaintiff Pemberton described Ms. Levin's conduct just prior to the conversation: "She is flailing her arms and resisting [Defendant Abdullah's] advance toward her. She is psychotic, loudly abusive, still hurling racial epithets." The reliability of Ms. Levin's accusation in the eyes of a reasonably cautious person is a question of fact for the jury. *See Lee v. Sandberg*, 136 F.3d 94, 103 (2d Cir. 1997) (finding that an arresting officer has probable cause to effect an arrest if informed of a crime by a purported victim "absent circumstances that raise doubts as to the victim's veracity"); *Abusikin v. City of N.Y.*, No. 18 Civ. 4582, 2021 WL 930349, at *6-7 (S.D.N.Y. Mar. 11, 2021) (denying summary judgment where disputed facts may, if resolved in nonmovant's favor, cast doubt on the veracity of the victims' account of events). Contrary to Defendants' argument, this is not a question of law to be gleaned from other cases in other circumstances finding that intoxication or racial slurs did or did not render an account unreliable.

The record also contains other, equivocal evidence of what the police were told about Plaintiff Pemberton's possible role in confining the MIST patrons. Defendant Abdullah testified that Plaintiff Baptiste or Debnam, both MIST staff members, said that Plaintiff Pemberton had directed them to prevent the women from leaving MIST. But a jury could conclude that this conversation never occurred as both Plaintiffs Baptiste and Debnam testified that their only conversation with the police was the brief exchange when they were arrested.

These and other factual disputes about the entirety of information that Defendants knew and what they could reasonably credit at the time of Plaintiffs' arrests preclude finding probable cause and arguable probable cause as a matter of law. Summary judgment is denied on the false arrest and malicious prosecution claims.[4]

### 3. The Arrest of Baptiste

Summary judgment is likewise denied on the false arrest and malicious prosecution claims brought by Plaintiff Baptiste. Defendant Abdullah testified that, in the same conversation between Defendant Abdullah and Ms. Levin described above and leading to Plaintiff Pemberton's arrest, Ms. Levin also told Defendant Abdullah that Plaintiffs Baptiste and Debnam were the individuals who prevented her from leaving MIST. As discussed above, a material

---

[4] The parties argue about whether false imprisonment under N.Y. Penal Law § 135 can be violated by a *directive* to another person to use physical force. Plaintiffs argue that a directive is insufficient. Defendants argue to the contrary and, to the extent that the law is unclear, that Defendants are entitled to qualified immunity. The Court finds that Defendants have the better argument both as to statutory interpretation and qualified immunity. Similarly, the parties argue about whether the criminal solicitation statute can provide the basis for a probable cause defense. For the reasons stated in Defendants' memoranda of law in support of the motion, the Court finds that the statute can support a probable cause or arguable probable cause defense at least with respect to the false arrest claim. These arguments are not addressed at length because the factual issues discussed in the text nevertheless preclude summary judgment.

question of fact exists as to whether the circumstances raised doubt about Ms. Levin's veracity sufficient to negate probable cause.

### B.     Failure to Intervene (Fourth Cause of Action)

Defendants apparently seek summary judgment on Plaintiffs' Fourth Cause of Action for failure to intervene, although the parties' memoranda of law do not discuss it.  Summary judgment is denied because the FAC's theory of the claim is that Defendants Sengco and Abdullah failed to intervene in the unconstitutional arrest and prosecution of Plaintiffs.  Because those claims remain to be decided, the failure to intervene claim remains.  *See Buari v. City of N.Y.*, No. 18 Civ. 12299, 2021 WL 1198371, at *17 (S.D.N.Y. Mar. 30, 2021) (stating that a failure to intervene claim is contingent on the underlying claim); *Rolkiewicz v. City of N.Y.*, 442 F. Supp. 3d 627, 646 (S.D.N.Y. 2020) (same).

It should be noted however that the claim appears to be nonsensical and unlikely to survive a motion at trial.  The evidence suggests that Defendant Sengco was the arresting officer who arrested Plaintiffs at the direction of Defendant Abdullah.  If so, it is unclear who could or should have intervened with whom.  *Cf., e.g.*, *Theodat v. City of N.Y.*, 818 F. App'x 79, 83 (2d Cir. 2020) (summary order) (finding evidence sufficient to support the jury's finding that the *non-arresting* police officer had the opportunity to intervene in the false arrest and was aware of its falsity).  A police officer is liable when (1) the officer had a realistic opportunity to intervene and prevent the harm; (2) a reasonable person in the officer's position would know that the victim's constitutional rights were being violated; and (3) the officer does not take reasonable steps to intervene.  *See Anderson v. Branen*, 17 F.3d 552, 557 (2d Cir. 1994); *Holland v. City of N.Y.*, 197 F. Supp. 3d 529, 549 (S.D.N.Y. 2016).  The failure to intervene claim survives.

C.     **Punitive Damages and Criminal Defense Fees**

Summary judgment is granted on the FAC's demand for punitive damages, which requires a showing that a defendant's conduct was motivated by "evil motive or intent, or when it involves reckless or callous indifference to federally protected rights of others." *Cardoza v. City of N.Y.*, 29 N.Y.S.3d 330, 341 (1st Dep't 2016); *see also Wiercinski v. Mangia 57, Inc.*, 787 F.3d 106, 115 (2d Cir. 2015) (outlining the substantially similar federal standard). Based on the evidence in the record no reasonable jury could find this degree of malevolent intent. The evidence shows that police officers responded to a chaotic scene with cross-accusations that resulted in arrests of individuals from both sides of the dispute. The evidence does not show evil motive or an indifference to federally protected rights.

Defendants seek summary judgment on Plaintiffs' demand to recover criminal defense costs they allegedly incurred as a result of their wrongful arrest and prosecution. The motion is denied. "The 'basic purpose' of § 1983 damages is 'to compensate persons for injuries that are caused by the deprivation of constitutional rights.'" *Townes v. City of N.Y.*, 176 F.3d 138, 147 (2d Cir. 1999) (quoting *Carey v. Piphus*, 435 U.S. 247, 254 (1978)). Criminal attorneys' fees may be recoverable in a § 1983 action. *See Manganiello v. City of N.Y.*, 612 F.3d 149, 168 (2d Cir. 2010); *Hillary v. Vill. of Potsdam*, No. 17 Civ. 659, 2020 WL 7122010, at *7 (N.D.N.Y. Nov. 2, 2020).

Defendants argue that the fees were paid by a third party and that Plaintiffs' cannot recover for damages they did not incur. Defendants' argument is rejected for two reasons. First, there is a factual dispute about whether Plaintiffs are liable for those fees or whether the payment by a third party was merely a loan. Second, and regardless of the outcome of that factual dispute, under the federal collateral source rule, Plaintiffs are entitled to fees on their § 1983

claims whether or not the fees were paid by a third party. The collateral source rule provides that a plaintiff's damages are not reduced to the extent the plaintiff recovers those damages from a third party. *See N.Y. State Elec. & Gas Corp. v. FirstEnergy Corp.*, 766 F.3d 212, 238 (2d Cir. 2014). The federal collateral source rule generally applies to federal claims, including § 1983 claims. *Doe v. Darien Bd. of Educ.*, No. 11 Civ. 1581, 2015 WL 7458498, at *2 (D. Conn. Nov. 24, 2015); *see also Hartnett v. Reiss S. S. Co.*, 421 F.2d 1011, 1016 n.3 (2d Cir. 1970) ("The general rule in the federal courts is that the collateral source rule is applied and defendants cannot show payments of this kind in mitigation."); *Shiwbodh v. Caribbean Airlines Ltd.*, No. 12 Civ. 01706, 2018 WL 1514242, at *15 (D. Conn. Mar. 27, 2018), *amended in part on other grounds*, 2018 WL 3241350 (D. Conn. July 3, 2018) (collecting cases).

## IV. CONCLUSION

For the foregoing reasons, Defendants' motion for summary judgment is granted in part and denied in part. For clarity, remaining are the First, Second, Fourth, Fifth and Sixth Causes of Action for federal and common law claims of false arrest and malicious prosecution and for the federal claim of failure to intervene. Plaintiffs' request for punitive damages is denied, but Plaintiffs' request for criminal defense fees survives.

The Clerk of Court is respectfully directed to close the motion at Dkt. No. 79. A trial scheduling order will follow, as will a referral to the Magistrate Judge for a settlement conference.

Dated: August 2, 2021
New York, New York

LORNA G. SCHOFIELD
UNITED STATES DISTRICT JUDGE

11